CARTER *v*. FRANKLIN COUNTY ROAD IMPROVEMENT DISTRICT.

Opinion delivered March 6, 1922.

1. HIGHWAYS—IMPROVEMENT DISTRICT—ABANDONMENT—COMPENSATION OF ENGINEERS.—Where engineers were employed to do all the engineering work of a projected road improvement, both preliminary and supervisory, for a compensation of five per centum of the cost of construction, one-half to be paid when the plans

and specifications were completed, and the balance in installments during the progress of the work, this form of contract did not constitute a separate contract for services performed in the preliminary work of the district, but constituted merely a specification of the time of payment.

2. HIGHWAYS—IMPROVEMENT DISTRICT—COMPENSATION OF ENGINEERS. —Where the commissioners of a road improvement district employed engineers to do the engineering work for a compensation of five per cent. of the cost of construction, and upon ascertainment of the estimated cost according to plans and specifications it was decided that the improvement could not be made, and the project was abandoned, the engineers were entitled to recover, not upon the contract, but upon *quantum meruit;* and the method and amount of payment fixed by the contract, while not determinative of the parties' rights, may be considered in determining the amount to be recovered for services rendered.

3. HIGHWAYS—IMPROVEMENT DISTRICT—COMPENSATION OF ENGINEERS. —A finding of the chancellor that the engineers of an abandoned road improvement project were entitled to $750 as compensation for preparing the plans and specifications *held* inadequate under the evidence, and the sum of $2,000 allowed therefor.

Appeal from Franklin Chancery Court, Ozark District; *J. V. Bourland,* Chancellor; reversed.

*Coleman, Robinson & House,* and *Saye & Saye,* for appellant.

1. By its amended answer, which, in so far as it is inconsistent with the original answer, supersedes it, appellee admits its organization as a road dstrict, the appointment and qualification of its commissioners, and the execution of the contract sued on. An amended and substituted pleading supersedes the original. 103 Ark. 345; 31 Cyc. 465; 21 R. C. L., Pleading, § 136.

2. Plaintiff is entitled to recover under the *quantum meruit* rule as laid down in *Morgan Engineering Co.* v. *Cache River Drainage District,* 115 Ark. 437, and in *Gould* v. *Toland,* 149 Ark. 476.

3. The work of the contracting engineers was approved and accepted by the board of commissioners, by the county court, by the chairman of the State Highway Commission, and the State Highway Engineer, and in the ab-

sence of evidence of dereliction on their part, the presumption must be that they accepted and approved only work that was properly done. 135 Ark. 353.

4. Applying the rule in the *Morgan Engineering Company* case, *supra,* appellant is entitled, under the uncontradicted evidence, to judgment for one-half of 5 per cent. of the total estimated cost of constructing the improvement, and interest thereon at 6 per cent. from the date of the filing of the estimates of costs, preliminary plans and specifications, in the county clerk's office.

5. If, however, *Gould v. Toland, supra,* may be said to disapprove the rule in the former case, and the *quantum meruit* rule must be applied strictly to this case, then appellant has sustained his claim, by evidence which is not disputed, to judgment for the sum of $3,529.77, with interest as stated above.

6. There was no objection raised in the lower court, either before or at the trial, that there was no bill of particulars submitted with the complaint. The right to complain on that ground must be treated as waived. 31 Cyc. 583; 47 So. 23; 21 R. C. L., Pleading, § 44.

*J. P. Clayton* and *John W. Newman,* for appellee.

When the appellant made the preliminary survey and estimated the probable cost, and advised the commissioners to abandon the project, they inquired of him what it would cost to settle with him, and he said $1,500. He now asks for $3,667.75 on a *quantum meruit* basis. He necessarily had to admit that the contract goes out upon the abandonment of the project. 106 Ark. 39; 119 *Id.* 188; 127 *Id.* 1; 232 S. W. 947. Since he admits advising the abandonment of the work, the contract may be considered as rescinded by mutual consent.

The use of the contract as of evidentiary value in fixing the compensation of the plaintiff, as was done in the *Morgan Engineering Company* case, 115 Ark. 437, can no more be made applicable in this case than in the *Gould* v. *Toland* case, 149 Ark. 476. This compensation must be determined from evidence aside from the contract, and

to that end the testimony as to the time consumed and the amount of work done, as well as the expenses incurred in doing the work, should be clear and definite, and not mere estimates and guesses at expenses, values and profits. We insist that a showing should have been made as indicated in the dissenting opinion in *Gould* v. *Toland, supra.*

McCULLOCH, C. J.  The plaintiff, H. R. Carter, sued in the circuit court of Franklin County as the survivor of a copartnership, composed of himself and another professional engineer, to recover for services performed for the defendant, Road Improvement District No. 2 of Franklin county, preliminary to the improvement of a public highway in accordance with the purpose of the organization of the district, which was formed under general statutes.  (Crawford & Moses' Digest, § 5399, *et seq.*)  The cause was transferred to the Chancery Court by agreement of the parties, and the plaintiff has appealed from a final decree for the recovery of a sum less than that claimed in the complaint.

Preliminary surveys, plans and specifications were furnished by the State Highway Commission as provided in the statute (Crawford & Moses' Digest, § 5400), to be used in the organization of the district, but, after the organization had been completed by proper orders of the county court, the commissioners employed plaintiff's firm to do the engineering work.

There was a written contract entered into between the commissioners and plaintiff's firm of engineers to do all the engineering work, both preliminary and supervisory, for a compensation of 5 per centum of the actual cost of the construction of the road, 50 per centum of the entire amount of compensation to be paid when the plans and specifications were completed, and the balance in installments during the progress of the work.  The form of the contract was precisely the same as that involved in other cases on this subject which have heretofore been before us for consideration.  *Morgan Engineering*

*Co.* v. *Cache River Drainage District,* 115 Ark. 437; *Gould* v. *Toland,* 149 Ark. 476; *Bowman Engineering Co.* v. *Arkansas-Missouri Highway District,* 151 Ark. 47. In each of those cases it was decided that this form of contract did not constitute a separate contract for services performed in preliminary work of the district, and it was also decided that the specification for payment of a given percentage when the plans and specifications were completed did not constitute a contract fixing the price for those services, but merely constituted a specification of the time of payment.

Upon the ascertainment of the estimated cost of the improvement according to the plans and specifications furnished by plaintiff, it was decided that the improvement could not be made, and the project was abandoned. There was no assessment of benefits ever made in this instance, and as the contract was premature and never became effective, the plaintiff's right of recovery is not based on the contract, but his recovery must be on the *quantum meruit.* In this respect the case is controlled by *Gould* v. *Toland, supra,* rather than by the other cases cited. It was held, however, in *Gould* v. *Toland, supra,* that the method and amount of payment fixed by the terms of the contract, while not determinative of the rights of the parties, might be considered as of evidentiary value in determining the amount to be recovered for the services rendered. So the question left for us to determine is one of fact concerning the proper amount to be allowed to the plaintiff for the value of the services rendered by his firm.

The plaintiff sued for the sum of $3,667.75, which is one-half of 5 per centum of the estimated cost of the improvement. This claim was resisted by the commissioners of the district on the ground that the services rendered were not worth that sum, and that the claim was excessive. The proof was adduced before the chancellor in the form of oral testimony and properly brought into the record, and the chancellor awarded the plaintiff the sum of $750 as compensation for the services rendered.

We are of the opinion that the conclusion of the chancellor in fixing the amount of compensation was on a wrong basis and is erroneous, and that the allowance is inadequate as compensation for the services shown to have been rendered.

The conclusion reached by the chancellor, as expressed in his opinion brought into the record, is that the proper allowance should be on a *per diem* basis of $25 for a period of thirty days. This is a wrong basis, for it fixes the compensation for one man for the given period, whereas, according to the undisputed testimony, the work was done by numerous employees of plaintiff's firm, some of them doing field work and others office work. The conclusion of the chancellor takes no account of any profits to which the engineers were personally entitled to over and above the expense of doing the work, nor of their own skill and business ability in being able to properly supervise the work and construct adequate plans and specifications sufficient to guide the commissioners in preparing for the improvement contemplated.

Accepting the testimony in the light most unfavorable to the plaintiff, we are convinced that he is entitled to the recovery of a sum considerably in excess of that allowed by the chancellor.

The road which was to be improved was slightly over 16 miles in length, in Franklin County, and the improvement was estimated by the engineers to cost the sum of $146,709.97. In the estimate made and furnished by plaintiff it is shown that there was to be 10 acres of clearing and grubbing, 7,060 rods of fences to be moved, 67,320 cubic yards of earth embankment, a certain amount of loose rock excavation and a certain amount of solid rock excavation, and an amount of concrete work, drainage and bridge work. The estimate is itemized, showing the amount of the cost of each item of the work and the material.

Plaintiff testified himself as a witness and stated that the field work was done by his brother, who was an experienced engineer, and that the office work was done

by his corps of assistants in the office, nine in number, who were engaged about thirty days in doing the office work. He testified in detail as to the method of doing the office work, making the estimates and calculations of the amount of work to be done of each kind, and the cost of the work and the material. He stated that the field work only consisted of running the lines and levels and notations of the acreage of clearing and rods of fences and the distances across streams, and that the calculations of the cost of these things were made in the office.

Plaintiff did not claim to be personally familiar with the extent of the field work further than what was shown by the reports of his assistants in the field and his general knowledge of the character and topography of the country. He stated, as an estimate, that two or three weeks' time was consumed in doing the field work.

Plaintiff's brother, W. E. Carter, who had charge of the field work, and is shown to have been an experienced engineer, testified that two or three weeks' time was consumed in doing the field work; that, after excluding the days of inclement weather, during which the expenses of the party continued, it took about ten days actual work to complete the field survey. He testified that the cost of labor amounted to $30 to $40 per day.

It is not stated by any of the witnesses whether an account was kept of the amount of days and hours consumed in doing the field work and cost of the work, nor was any witness interrogated on this subject. Plaintiff himself was not asked whether or not such an account was kept, and he was not asked to produce the account. One of the most material factors in determining the value of services of this kind is the actual cost and expense of doing the work. *Gould* v. *Toland, supra.* Therefore, it is highly important in investigations of this sort to require the person asserting the claim to produce evidence of such cost and expense, it being a matter within his knowledge and keeping. *Miller* v. *Jones,* 32 Ark. 337.

It does not accord with good business practices not to keep such an account. It would seem to be the natural thing for a firm of engineers in sending out a surveying party to have them make accurate, itemized reports of the amounts expended and also the time consumed in doing the work. In the present case, however, it appears that neither party insisted upon a production of evidence of the actual cost of doing the work and contented themselves with a trial of the issues upon their estimates of what it cost to do the work and what would be a fair value of the services. Plaintiff therefore is not to be denied recovery, since he was not called on to produce the account showing the cost and expenses. It becomes the duty of the court, notwithstanding this omission, to allow such sums as the evidence warrants as a fair compensation for the services performed.

The plaintiff's case, so far as relates to the amount of the recovery, depends much upon his own testimony, which, as before stated, was a mere estimate of the amount of time and money expended, though he was accurate in detail in stating the results of the work. Another witness, Mr. Pritchett, testified as an expert engineer and gave it as his opinion, based upon his general knowledge of the country and an examination of the plans and estimates. made by plaintiff, that one-half of the 5 per cent. commission on the total cost of construction would be a fair and just compensation for doing the work which was done by plaintiff's firm.

The plaintiff estimated the actual cost of doing the work at the sum of $2,779.77. This figure was based upon his estimate of the amount of time consumed in doing the field work and the office work. Estimating this amount of cost and adding interest, which ran his estimate of cost up to $3,043.85, he thought that the sum of $623.90 would be a fair profit for himself and his copartner on a contract of that magnitude and involving that much service. We are of the opinion, however, that plaintiff's estimate of the cost of the field work is not justified by the facts as detailed by other witnesses, and

that his estimate of the amount of time consumed in doing the office work was excessive. His estimate of the field work was that it cost $75 a mile, which would be $1,200, which left the sum of $1,579.77 as his estimate of the cost of doing the office work.

The testimony of plaintiff's brother, Mr. W. E. Carter, shows clearly that the estimate of $1,200 for the field work is excessive. At any rate, we are justified in finding from the testimony of W. E. Carter that the cost of the field work was less than half that sum. He testified that his party was on expenses for two or three weeks at from $30 to $40 per day, and, accepting his lowest estimate, it would amount to an expense of less than $500. There is other testimony adduced by defendant which tends to show that the time and amount of labor consumed in doing the field work was considerably less than that stated by witness W. E. Carter.

There was no other testimony than that of the plaintiff himself as to the amount of time consumed in doing the office work, but the estimate of thirty days for nine people on a road only 16 miles in length would seem on its face to be excessive. The testimony coming from the plaintiff himself, an interested party, the court is justified in weighing it with a degree of allowance.

We have reached the conclusion that it would be unsafe to place the estimate of the cost—being a mere estimate—at more than one-half of the amount included in the plaintiff's own estimate. The estimate of the plaintiff for the profits and compensation for the skill of the engineers themselves was $623.90, and we do not think that this is excessive.

There is no way of determining with exactness what the allowance for compensation should be under the circumstances, and the most that we can hope for is a reasonable approximation of a just and fair amount.

We are of the opinion that under the evidence an allowance of $2,000 would be as nearly accurate as we

can determine from the testimony.   The decree will therefore be reversed, and a judgment will be rendered here for that sum.

It is so ordered.

HART, J., (dissenting). Judge WOOD and myself think the record in this case calls for an application of the maxim that the non-production of evidence clearly within the power of a party, creates a strong presumption that, if produced, it would be against him.

As pointed out in our dissenting opinion in *Bowman Engineering Co.* v. *Ark. & Mo. Highway Dist.*, 151 Ark. 47, the adverse inference is one of fact and does not depend upon the demand of such evidence by the adverse party where the burden of proof is upon the party failing to produce it.   See case note in Ann. Cas. 1914-A, p. 909. Our own case of *Miller* v. *Jones*, 32 Ark. 337, is an illustration.   In that case the trial court had erred in permitting the jury to compare the handwriting of several papers read in evidence with the plaintiff's signature to other papers not in the case, yet the court was of the opinion that this should not cause the verdict to be disturbed.   The reason given was that the plaintiff was a witness for himself, and did not deny the genuineness of the signature to the papers.   The court said that this was a circumstance so significant as to allow no doubt that they were genuine.   It does not appear from the record that the plaintiff was asked about the matter, still the court said that the maxim applied, and affirmed the judgment, notwithstanding the error in the admission of evidence.

Here Carter was the plaintiff, and, instead of producing his records and pay-rolls to establish his claim, he attempts to show in a general way what the survey cost him.   While Carter was not compelled to introduce the records until required by legal process, yet he might have done so, and settled the question in all probability beyond controversy.   The burden of proof was on him, and his failure to do this is certainly a very strong cir-

cumstance against him. Carter's own testimony shows that a record of the survey was kept, and that there was a pay-roll of the field party. Carter testified that the estimates were made from the field notes of his brother. The field notes would undoubtedly have shown the number of days W. E. Carter and party worked. Again, the plaintiff Carter testified that his brother, W. E. Carter, was in his employ and paid the men with him in the field. This shows a pay-roll. Carter then had in his hands records showing the number of days the field party worked, and the amount paid them. Therefore, the chancellor had a right to disregard his general statement and that of his brother that the field survey took two or three weeks, and cost something like between $30 and $40 per day. Especially is this true when we consider the testimony of the commissioners.

The road was a little over 16 miles long. One of the commissioners stayed with the surveying party two and a half days, and during that time they surveyed seven miles of the road.

Another commissioner said that, during the progress of the survey, Carter told him that he would finish in five and a half days, and that he did finish the next day. Other evidence showed that in places they never moved the stobs which had been placed there during a former survey by the State Highway Department, and that this survey cost $90.

The majority opinion condemns as extravagant the time and number of men Carter said it took to make the blue-prints and the estimates from the field notes. The contemplated road was a dirt one. It is not shown that there were any engineering difficulties. According to the evidence for the district, the sum allowed by the chancellor would have covered the expenses of the survey and allowed the engineer a liberal profit for supervision.

The conduct of the plaintiff in omitting to produce that evidence which was in his power and which rested peculiarly within his knowledge, raised a strong presump-

tion that such evidence would operate to his prejudice. It is an inference of fact and not a presumption of law. The rule springs from Lord Mansfield's maxim that "all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted."

The salutary effect of this rule is made apparent by the majority opinion where it is said that the testimony of the plaintiff's brother shows that his estimate of the field work is excessive, and that the plaintiff's own evidence as to the number of men and the time it took them to make the estimates from the field-notes "would seem on its face to be excessive."

The plaintiff's own records could have put the matter at rest; and no reason is given by him why he did not introduce them in evidence.