CARTER *v.* BRADLEY COUNTY ROAD IMPROVEMENT DISTRICTS 1 AND 2.

Opinion delivered October 16, 1923.

1. HIGHWAYS—EMPLOYMENT OF STATE HIGHWAY ENGINEER.—Where a contract employing the State Highway Engineer as the engineer of a road improvement was invalid as against public policy, it is immaterial that the contract stipulates that it should not become effective until he executed a bond, and that the bond was not executed until after his successor as State Highway Engineer had qualified.

2. CONTRACTS—DISQUALIFICATION FROM PUBLIC POLICY NOT WAIVED.—Disqualification of a party to enter into a contract on ground of public policy cannot be waived by the other parties to the contract.

3. HIGHWAYS—OATH OF STATE HIGHWAY ENGINEER.—Crawford & Moses' Dig., § 5178, providing that the State Highway Engineer shall take oath that he will not become interested, directly or indirectly, in any contract for the construction of any public highway, amounts to a prohibition against his entering into such a contract.

4. HIGHWAYS—EMPLOYMENT OF STATE HIGHWAY ENGINEER.—Where a contract employing the State Highway Engineer as engineer of a road improvement district was entered into while he held that office, and he predicates his right to recover on that contract, such contract being within the prohibition of Crawford & Moses' Dig., § 5178, it is immaterial that his services under the contract were performed after he had ceased to be the State Highway Engineer.

5. WORK AND LABOR—RECOVERY ON QUANTUM MERUIT—PROHIBITED CONTRACT.—There can be no *quantum meruit* recovery for ser-

vices where plaintiff cannot establish his case without the aid of a contract prohibited by statute.

6. WORK AND LABOR—QUANTUM MERUIT.—The fact that a contract employing the State Highway Engineer as engineer of a road improvement district was tentative, because the assessment of benefits in the district had not been made, does not allow of recovery on *quantum meruit* basis for services performed under the contract, where it was void when made as violating Crawford & Moses' Dig., § 5178.

7. HIGHWAYS—OATH OF STATE HIGHWAY ENGINEER.—The oath of the State Highway Engineer, prescribed by Crawford & Moses' Dig., § 5178, that he shall not be interested in a contract for construction of any public highway applies to highways provided for by special acts as well as those to be built under the general law.

8. HIGHWAYS—PUBLIC POLICY.—Though a special act tendering the State Highway Engineer the position of engineer for a certain road district would have governed his relationship with that particular district, had he accepted the position, it did not change the public policy implied from Crawford & Moses' Dig., § 5178, prescribing the State Highway Engineer's oath and prohibiting him from becoming engineer for any other road district.

Appeal from Bradley Chancery Court; *E. G. Hammock*, Chancellor; affirmed.

*Coleman, Robinson & House* and *D. K. Hawthorne*, for appellant.

Appellees' attack upon the validity of the contract is not justified by the facts and circumstances under which it was entered into between Carter and the commissioners of the road improvement district. In the light of these facts and circumstances, there is nothing in Carter's oath of office, act 302, Acts 1913, § 10, to prohibit the contract. If, in fact, the contract was prohibited by the oath, and therefore void, Carter is nevertheless entitled to recover upon a *quantum meruit.*

If the contract was not binding on the district, the mere fact that it was prohibited would not prevent a recovery *quantum meruit,* where, by its terms, the contract was not to take effect until the relationship out of which the prohibition grew had been dissolved, and where no service was performed until after that event. 232 S.

W. 434; 235 S. W. 339; 238 S. W. 69; 37 N. E. 96.
If parties enter into a contract that is *malum prohibitum*,
and one of the parties has done work thereunder which
the other has accepted, and he can make out his cause of
action without reference to the illegal contract, he is en-
titled to recover the value of the work done and accepted.
6 R. C. L. 821; 29 Ark. 386; 91 Ark. 209; 16 Wall. 483;
33 Fed. 440; 44 Ark. 74; 106 Ark. 568; Greenwood on
Public Policy, 7; 41 Pac. 133; 45 N. W. 242; 60 Ga. 222;
109 Calif. 140; 26 Neb. 149; 33 Mich. 61.

*J. C. Clary* and *R. W. Wilson,* for appellee.

Appellant is barred from any recovery at all, be-
cause his claims are either founded upon the contract or
grew out of it, and that contract is void because it af-
fects public service, and is against public policy.   6 R.
C. L., par. 136, pp. 730-31; 47 Ark. 384; 81 *Id.* 41-45; 34
*Id.* 765; 81 *Id.* 602; 6 R. C. L. 712; 124 Ark. 6; 146 *Id.* 61-
64; Elliott on Contracts, vol. 2, §§ 649, 706; 24 L. R. A.
206.   It is prohibited by the statute.   73 Am. St. Rep.
31; 124 Ark. 6; 7 Wall. 542, 18 L. Ed., 244; 35 Am. St.
Rep. 793; 29 Ark. 388; 146 *Id.* 63.

The fact that Carter did not execute the bond re-
quired by the contract until after the appointment and
qualification of his successor, does not affect the case,
for when he did execute it and it was approved, the con-
tract became retroactive and dated back to the time the
contract was executed.

The question as to when the contract became bind-
ing is immaterial, because the act which prescribes the
oath of the Highway Engineer prohibits officials from
becoming interested, either directly or indirectly, in any
contract during their connection with the Department of
the State Highways and Improvements, and makes no
mention of when such a contract becomes effective or
binding.

SMITH, J. Appellant H. R. Carter filed his complaint
in the Bradley Chancery Court, and alleged as his cause
of action the following facts:  That Bradley County Road

Improvement District No. 1 was organized under act 237 of the Acts of 1919 for the purpose of constructing and improving certain roads in Bradley County, and that on March 19, 1919, the commissioners of said district, therein named, entered into a written contract with him whereby he was employed as the engineer of the district. That, after the execution of the contract, a map of the district was prepared and certain preliminary surveys made, but full performance of the contract was prevented by litigation instituted by landowners in the district, and by act 74, passed at the 1921 session of the General Assembly, repealing act 237 of the Acts of 1919, and vesting the chancery court of Bradley County with jurisdiction to adjudicate and adjust the claims of all parties against the district arising out of contract or otherwise, and providing that all claims not so presented within six months should be barred. Pursuant to this act this suit was filed, the contract being made an exhibit to the complaint.

The complaint sets out the terms of the contract and recites the services which were performed under the authority thereof, and compensation was prayed therefor, pursuant to its provisions on that subject.

The contract provided that all plans should be prepared and work done by Carter in accordance with the regulations prescribed by the Federal Government and the State Highway Department, in order that the district might be entitled to all contributions of road aid funds that might be available from the United States or the State of Arkansas, and that in all instances, when required by law or order of the commission, the plans or any details thereof should be submitted to the State Highway Department for its approval. It was provided that if any of these duties were not performed by the engineer, the State Highway Department should have the right to terminate the contract, in which event Carter's compensation should be the amount earned by him at the time of its termination, and the contract contained stipulations governing time and terms of payment. There was also a provision that, if the improvement was not

completed within a time limit of eighteen months, the district should pay Carter the sum of $10 per day for each day beyond that time as additional compensation. The contract further recited that it was made pursuant to the regulations of the State Highway Department, as authorized by act 105 of the Acts of 1917, and that the contract was made out in the form and contained the provisions approved by the State Highway Commission. The contract was duly approved by the Commission of the State Highway Department.

Performance is alleged of all conditions imposed on the engineer by the contract, and the sums of money are stated which are alleged to be due under the contract, and judgment therefor was prayed.

A similar case was stated against Road Improvement District No. 2 of Bradley County, and, as the facts are identical, the cases are briefed as a single one, and we shall so treat them.

Testimony was taken showing that Carter rendered services under his contract of value to the district.

Certain owners of land within the district made themselves parties and filed pleadings, the recitals of which need not be stated, as they were overruled by the court below. An answer was then filed containing certain allegations raising issues which have been decided against them. *Bradley County Rd. Imp. Dists. No. 1 and 2 v. Jarratt,* 144 Ark. 260; *Johns v. Road Imp. Districts of Bradley County,* 142 Ark. 73.

The answer, however, put in issue all the allegations of the complaint, denied the contract's execution and validity, and denied that services performed thereunder were of value, and alleged that the contract was void as contravening public policy for reasons hereinafter appearing.

In a written opinion the court below made the finding that the contract sued on contravened public policy, and dismissed the complaint, and this appeal is from that decree.

The testimony established the following facts: Carter was appointed State Highway Engineer and served a term expiring in 1915. He was reappointed in 1915, 1917, and 1919. At the beginning of his last term, about January 1, 1919, he took the oath of office prescribed by the statute. Carter tendered his resignation in February, 1919, but because of the inability of the highway commission to secure a successor he agreed to serve until a successor could be secured, and he did serve until the 1st of April, 1919, at which time his successor was appointed and qualified. Carter discharged the duties of State Highway Engineer during the month of March and drew from the State pay for services for the entire month.

The contract contained a stipulation to the effect that it should not become effective until Carter had made and filed with the commissioners of the road improvement district a bond for the faithful performance of the contract upon his part. This bond was not filed until the 1st of June, and Carter claims no compensation for services prior to that time.

For the reversal of the decree of the court below it is insisted, first, that the contract does not fall within the terms of the statute prohibiting the State Highway Engineer from being interested in road building contracts; second, that, if prohibited, the contract was nevertheless valid, because, by the intention of the parties as well as by the express stipulation of the contract itself, it was not to take effect, and did not take effect, until the conditions were such that Carter was in a position to make a contract with the road district; third, that, if the contract was void because prohibited, Carter is entitled to recover *quantum meruit*, because the *malum prohibitum* had been raised before anything was done under the contract; fourth, because, at the date of the contract, no assessment of benefits had been made by the road district, and the district was not therefore in a position to make contract for engineering services covering the construction of the road. Are any of these positions correct?

The official oath taken by Carter appears at section 5178, C. & M. Digest, and reads as follows:

"All officers and employees of the Department of State Lands, Highways and Improvement shall take such oath of office as is provided in the Constitution, and in addition thereto they shall take and subscribe the following oath before entering on the discharge of their duties: 'I do solemnly swear, or affirm, that I am not now interested in nor will I become interested, either directly or indirectly, during my connection with the Department of State Lands, Highways and Improvements, in the sale or lease of any lands or timber, water or mineral rights of any kind, either to or from the State; neither am I interested in nor will I become interested, otherwise than as an official of the State, in the location or approval of any public road or any other public improvement in this State, nor in any contract or arrangement for the construction or maintenance of any public road or highway or other improvement, nor in the provision of supplies or materials therefor, nor in the appointment of any person to any position in connection therewith; neither will I ever use any information or influence I may have by reason of my official position to gain any pecuniary reward or material advantage to myself, nor give away such information or influence that it may be so used by others. So help me God.' "

The duties of the State Highway Engineer are defined in section 5207, C. & M. Digest, as follows:

"The State Highway Engineer shall make such surveys, investigations and inspections, and prepare such maps, plans, specifications, estimates and reports, and do such other technical work as may be required by the department. He shall, under the direction of the Commissioner of State Lands, Highways and Improvements, perform such other duties as may be required by law and may be proper and convenient for carrying out the purpose of this act."

It appears, from the recital of facts in the opinion in the case of *Road Improvement Districts Nos. 1 and 2*

v. *Jarratt, supra,* that the commissioners of these districts made and perfected their organization in the office of the State Highway Commission, and that they thereafter called upon the State Highway Department to have preliminary surveys of the roads made, but this request was not complied with because funds to defray the expense were not available. The commissioners of the road districts were advised that they would have to employ an engineer anyway who could make the survey under the direction of the State Highway Department and file the surveys, plans and specifications with it for approval. That three engineers applied before the board for the position of engineer, one of whom was Carter. Carter did not tell the commissioners that they would have to employ him, or use words to that effect, but he was employed and entered into written contract with the districts for engineering services, including preliminary as well as final surveys, and for supervision of the construction work, for an agreed fee.

The facts just stated and others recited in the opinion in the Jarratt case, *supra,* throw light on the circumstances under which the contract here sued on was made and something of the public policy involved in the engineer's oath and in the statute defining his duties. The department was called on for preliminary plans, which would have been made by it had funds therefor been available. Had the plans been so made, they would have been made under the direction of Carter. Under the circumstances the department did not make them, and the commissioners of the road districts proceeded to contract with the engineering officer representing the department, not only to make the preliminary plans, but to do the entire engineering work. The contract entered into was prepared on a form furnished by the highway department, and, as much of it is technical, it is fair to assume that the highway engineer had been instrumental in its preparation. Such, at least, were his duties. Secs. 5207, 5208, C. & M. Digest. And finally, after the negotiations had been completed between Carter and the

road commissioners, the contract was executed and then approved by the highway commissioner, whose adviser in such matters Carter was.

It is true the contract contained the stipulation that it should not become effective until Carter had executed a bond; and it is also true that this bond was not executed until after Carter's successor in office had qualified. But this stipulation was put into the contract at the time it was made and was a part of it. Carter had the power, at his own volition, to make it effective by filing the bond; and if his act in making this contract contravened public policy, the stipulation postponing the time when it should become final was a mere waiver of its invalidity by the road commissioners as contracting parties. Their signing was unqualified. So far as they were concerned, they became bound when they signed, and when Carter filed, at his pleasure, the bond called for by the contract, it related back to the time of its execution, which, as has been said, was during his employment as State Highway Engineer.

It is settled law that if parties to a contract are disqualified, from considerations of public policy, from contracting, they cannot, by any subterfuge, waive the disqualification, the one in favor of the other. As was said in the case of *Hall* v. *Coppell,* 7 Wall. 542: ''Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons.'' See also *Seitz* v. *Michel,* 12 A. L. R. 1060.

We think the doctrine announced in the case of *Tallman* v. *Lewis,* 124 Ark. 6, is applicable here. Tallman was a commissioner of a drainage district, and had been employed by the board of commissioners to supervise the construction of the drainage ditch. The law under which he was proceeding did not provide that any con-

tract made by a commissioner with the drainage district should be void, but it did require the commissioner to make oath that he would not, directly or indirectly, be interested in any contract made by the board. We there said that the requirement that the oath to be taken amounted to an express prohibition to him, and that to permit a recovery upon rights growing out of such a contract would, in effect, abrogate the statute. So here the oath of the highway engineer must be treated as a prohibition against entering into contracts whereby he becomes interested, directly or indirectly, in any contract for the construction or maintenance of any public road. The contract sued on was one under which, if performed, Carter would have earned large sums of money.

It is true, Tallman performed services while he was still a commissioner, and Carter sues for services rendered after he ceased to be State Highway Engineer; but that difference is unimportant, as Carter predicates his right to recover for the services upon a contract entered into while he held that office. He alleges no right of recovery except his contract. He predicates his right of recovery here, as he did here in the Jarratt case, *supra*, upon a contract. He makes no claim that there was more than one contract, and while he did render the services after he ceased to be State Highway Engineer, he rendered them under the written contract, and he has, at all times, and does now, assert his rights thereunder, and he must prove his contract as an essential part of his right to recover.

We think it appears, from what we have said, that the contract was within the inhibition of the statute, and that the provision postponing the time when it should become effective adds nothing to its validity.

Carter cannot recover *quantum meruit*. In the case of *Martin* v. *Hodge,* 47 Ark. 378, the court, after holding that every contract made for or about anything which is prohibited by statute is void, though the statute does not declare it so, proceeded, through Justice BATTLE, to say:

"The test to determine whether a plaintiff is entitled to recover in an action like this or not is his ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends on a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery. *Eberman* v. *Reitzel,* 1 Watts and S., 181; *Phalen* v. *Clark,* 19 Conn. 421; *Armstrong* v. *Toler,* 11 Wheaton 258."

In *Wood* v. *Stewart,* 81 Ark. 41, the court said: "Whenever a plaintiff comes into a court of equity and must rely, as the foundation of his relief, upon a contract which is illegal, he proves himself out of court, for the court will not lend its aid to enforce such a contract. The bare statement of his grounds for relief bears on its face the death-wound to his cause of action. It is not essential that the contract should concern an act criminal in its nature before the court will refuse to enforce it. If it is a contract for the doing of an illegal or immoral thing, or one contrary to statute or public policy, whether it be criminal or not, a court of equity will not enforce the contract. Story's Eq. Jur., secs. 296, 296a; Pom. Eq. Jur., secs. 929-939; *Mendel* v. *Davies,* 46 Ark. 420; *Woodruff* v. *Berry,* 40 Ark. 251; *McMullen* v. *Hoffman,* 174 U. S. 639; *Atcheson* v. *Mallon,* 43 N. Y. 147." See also *Pinney* v. *First National Bank of Concordia,* 1 A. & E. Cases, 331.

The case of *Berka* v. *Woodward,* 125 Cal. 119, 73 Am. St. Rep. 31, is a very instructive and well-considered case, and one frequently cited and quoted from. We quote from it as follows: "Nor in such cases does it matter whether the contract has been partially or wholly performed, or whether the consideration has passed or not. 'The test', says Judge Duncan in *Swan* v. *Scott,* 11 Serg. & R. 164, 'whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his

case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant.' And this must be so, for, while as a matter of private justice between individuals it would be but fair that one under such an illegal contract should restore the consideration or should make the payment, the rights of the public are superior to any such private considerations, and the public's right is that the fountains of justice shall remain unpolluted; that no court shall lend its aid to a man who grounds his actions upon an immoral or illegal act. Therefore there is no place for equitable considerations, presumptions, or estoppels. *Fowler* v. *Scully,* 72 Pa. St. 456, 13 Am. Rep. 699. *Ex turpi causa non oritur actio.* Whenever such a contract comes before the court, the action must fail, and the parties will be left in the situation in which they may be found." See also *Norbeck & Nicholson* v. *State,* Ann. Cas., 1916-A, 239; *Levinson* v. *Boas,* 11 A. & E. Cases 661.

What we have just said is conclusive also of appellant's fourth proposition, that the contract, at best, was tentative, because the assessment of betterments had not been made by the improvement district. We have held that contracts, except for preliminary expenses, are tentative until an assessment of benefits shows that the cost of the improvement will not exceed the benefits, and in those cases permitted a recovery *quantum meruit* for preliminary expenses where contracts covering the entire cost were unenforceable because they were prematurely made. Appellant seeks to invoke the doctrine of those cases here. But the circumstance which distinguishes those cases from the instant case is that there the contracts were unenforceable only because they were prematurely made, while here the contract was void when made because it contravened public policy.

We conclude therefore that the court below properly dismissed the complaint as being based upon a contract which was void because it contravened public policy.

Decree affirmed.

McCULLOCH, C.J., and HUMPHREYS, J., dissent.

Smith, J., (on rehearing). It is urged in support of the motion for rehearing that section 5178, C. & M. Digest, applies only to those highways which are being constructed under the act of which that section is a part, and does not apply to highways being constructed under special acts. We do not think so. The plain language of the statute is against that view. The oath prescribed by law and taken by the State Highway Engineer was "that he was not interested in and would not become interested in the location or approval of any public road or other public improvement, nor any contract or arrangement for the construction or maintenance of any public road or highway or other improvement," and it would, of course, be unimportant whether the road or improvement was being constructed under a general or a special law, as the statute makes no such distinction.

The argument is renewed that Carter should be allowed to recover *quantum meruit,* as he does not seek to recover on the contract. It is true the engineer does not use the provisions of the contract in regard to his compensation to measure the compensation he should receive, and that he asks only such compensation as he would be entitled to receive had there been no provision in the contract on the subject of compensation. But the answer to that argument is that his right to any compensation depends on the contract. He does not show any right to recover anything except by proving this contract. There was never but one contract, and it provided, not only for the compensation, but for the employment. The only contract Carter had was the one sued on and made an exhibit to his demand, and he must prove this contract to show that he was not a mere volunteer in performing the services for which he sues.

It is argued that we should not hold the contract in question void as against public policy, for the reason that on March 11, 1919, while Carter was filling the office of State Highway Engineer, the General Assembly passed an act numbered 247, approved on that day, which named

Carter as engineer for the Northern Road District of Arkansas County.

It may be conceded that the General Assembly has the right to declare the State's public policy, and that the General Assembly had the right to name Carter as the engineer for the improvement district created by the special act; but it must be presumed that there were special reasons for doing so, as this was a special act. This special act No. 247 did not purport to amend the general law under which Carter was discharging the duties of State Highway Engineer.

Under Act No. 247 Carter was given ninety days in which to accept the appointment tendered by the act; but that act would have governed his relationship to that special district only, and did not otherwise purport to absolve him from the obligations of his oath or from the penalty for its violation prescribed by section 5179, C. & M. Digest.

After a careful consideration of all the questions raised in the brief for rehearing we adhere to the view that the contract in question was contrary to public policy, and any recovery under it was properly denied. The motion for rehearing is therefore overruled.

McCULLOCH, C. J., (dissenting). In a legal sense, Carter had no contract with the road improvement district, for the written engagement was entered into before any assessment was made, and it was premature and unenforceable. Recovery for services performed is not sought under the terms of a contract, but on a *quantum meruit.* The writing is identical with the one discussed in the numerous decisions of this court, and it did not constitute a contract even for preliminary work. It purported to be a contract for all of the engineering work, both preliminary and constructive, and the specification of preliminary work could not be separated. *Cherry* v. *Bowman,* 106 Ark. 39; *Thibault* v. *McHaney,* 119 Ark. 188; *Gould* v. *Toland,* 149 Ark. 476; *Bowman Engineering Co.* v. *Road District,* 151 Ark. 47; *Carter* v. *Franklin County Rd. Dist.,* 152 Ark. 302.

In all of the cases cited above, and others, we·held that a recovery could be had only on a *quantum meruit* basis.   The premature ·contracts were disregarded en-· tirely, except that they were, to some extent, evidentiary in the nature of admissions as to the value of the services actually performed.

The case of *Tallman* v. *Lewis,* 124 Ark. 6, is control- ling to the extent that it holds that one who performs services while under statutory inhibition cannot recover even on a *quantum meruit,* and the opinion in the case distinguished it from former decisions (*Spearman* v. *Texarkana,* 58 Ark. 348; *Frick* v. *Brinkley,* 61 Ark. 397; *Smith* v. *Dandridge,* 98 Ark. 38) where the contracts were void, not under prohibiting statutes, but merely because contrary to public policy.   But in that case (*Tallman* v. *Lewis, supra*) the person seeking recovery was labor- ing under a. disqualifying statute at the time he per- formed the services.   In ·the present case Carter was in no ·such ·condition when ·he performed the services.   He was then free to contract with the road district, and his situation was the same as if he had performed the serv- ices under a new contract without taint of violation of statute or public policy, or as if he had no ·contract. In fact, he had no ·contract with the road district, for, as before stated, the written engagement was premature and unenforceable, even if otherwise valid.

I am therefore unable to see how Carter can, under settled principles, be denied recovery for ·his services merely because ·his original engagement with the road district fell under the ban of public policy.   The major- ity in their opinion expressly repudiate this distinction and ·do so on the ground stated that Carter predicates his right to recovery on the illegal contract.   Such is not the case, however, for the recovery is sought on a *quantum meruit* basis.   A valid contract is not essential to recovery on that basis.   There is no enforceable ·con- tract, and, even though ·the writing was set forth in the pleadings, recovery was sought for the actual value of the services performed.   Recovery should not·be denied

merely because an alleged contract was unnecessarily set forth in the complaint, for it is the duty of the court to give relief to which the party is entitled under the pleadings and proof, regardless of any mistaken allegation of immaterial matter. A party has the right to abandon an immaterial or erroneous allegation where the relief sought is not inconsistent with it. The complaint in the case seeks relief on a *quantum meruit*, and that relief is not inconsistent with the allegations.

The very case on which the majority seem to mainly rely (*Berka* v. *Woodward*, 125 Cal. 119) is contrary to the conclusion they have reached. In that case the court said: "When such a contract has been executed without objection and actual benefits have been received under it, all parties acting in entire good faith, the law is maintained and ends of justice subserved by disregarding those parts of the expressed agreement wherein advantage might have been taken, and allowing compensation merely for the reasonable value of the benefits received under it. Consideration of public policy does not require the doing of less than this."

There is no uncertainty in the rules of law or in the principles of equity under which a recovery on a *quantum meruit* is permitted. They have found expression in many of the decisions of this court. The term "*quantum meruit*," literally interpreted, means "as much as he deserved," and is broad enough to permit recovery, without a valid contract, for services performed and accepted. It is peculiarly a doctrine of equity, whether invoked at law or in equity, and the ends of justice are not served by a refusal to apply it on the ground that the original contract was void.

Mr. Justice HUMPHREYS concurs.