CITY NATIONAL BANK *v.* DeBAUM.

Opinion delivered July 7, 1924.

1. LICENSES—VIOLATION OF BLUE SKY LAW.—Failure of a domestic corporation selling its own stock to comply with the Blue Sky law (Crawford & Moses' Digest, § 751 *et seq.*) renders notes given for such stock invalid and noncollectable, except by an innocent purchaser for value.

2. LICENSES—APPLICATION OF BLUE SKY LAW.—The Blue Sky law applies to domestic as well as to foreign corporations selling their own stock.

3. BILLS AND NOTES—INVALID NOTE—ESTOPPEL.—The fact that the maker of a note, invalid because the transaction involved a violation of the Blue Sky law, assured a purchaser of the note that it would be paid, will not estop him from setting up such invalidity when sued upon the note.

4. CONTRACTS—VIOLATION OF LAW—VALIDATION.—Contracts made in violation of law are not rendered valid by renewals or by subsequent promises to perform them.

5. BILLS AND NOTES—INVALID NOTE—INNOCENT PURCHASER.—The right of an innocent purchaser to recover on a negotiable

instrument cannot be defeated merely because it is based on an illegal transaction or one prohibited by law, unless the statute makes such instrument absolutely void.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

*James B. McDonough,* for appellant.

*Warner, Hardin & Warner* and *Gallaher & Gean,* for appellees.

Appellees were entitled to an instructed verdict, because the notes sued on were illegal and void, having been given for stock issued and sold in violation of the statutes, the Blue Sky law, and of the Constitution, art. 12, § 8, by a domestic corporation. C. & M. Digest, §§ 750 *et seq.;* 147 Ark. 402; 217 Fed. 904; Ann. Cas. 1916A, 701.

*Cravens & Cravens* and *James B. McDonough,* in reply.

The Blue Sky law does not apply to a glass manufacturing company. This company was not organized under that law but under C. & M. Digest, §§ 1700 *et seq.* The Blue Sky law is directed against the sale of contracts, stocks and securities of fly-by-night concerns, and not against the *issuance* of stock by an operating manufacturing corporation. The capital stock of the glass company is not a security within the meaning of the Blue Sky law, and the definition of an investment company under C. & M. Digest, § 751, does not include a corporation organized to manufacture glass. In this case, DeBaum and Fentress were in the attitude of subscribers for part of the residue of the capital stock remaining unsubscribed by the corporators, the authorized capital stock being $100,000, and the incorporators having subscribed $51,000. C & M. Dig., § 1714; 54 Ark. 316; 161 Ark. 294; 123 Ark. 575; 242 U. S. 539; L. R. A., 1917F, 524, note; 217 Fed. 904; 110 Ark. 269; 218 Fed. 482; 37 Neb. 197; 149 Wis. 631; 88 N. E. 879.

SMITH, J. The City National Bank brought suits on the promissory notes of appellees DeBaum and Fentress, which were consolidated and tried together. The

notes were payable to the Crystal Glass Company, and had been indorsed and delivered by that company to the bank as collateral to a loan made the company by the bank. The Crystal Glass Company, hereinafter referred to as the company, was organized as a manufacturing corporation with an authorized capital of $100,000. Fifty-one thousand dollars of this stock was subscribed for, of which $10,000 was paid in cash and $41,000 in property. After the company had received its certificate of incorporation, stock was sold to DeBaum and Fentress, in payment of which they executed their notes to the company. We think this so clearly appears that it may be treated as an undisputed fact. The articles of agreement and incorporation of the company do not show that either DeBaum or Fentress were among the original incorporators or that either of them were subscribers for stock in said company at the time of its incorporation in August, 1920.

The notes first given for this stock were not paid, but were renewed after a payment had been made on one of them, and before the renewal notes matured the company was adjudged a bankrupt, and, when DeBaum and Fentress refused to pay the notes on their maturity, this suit was brought to enforce payment.

It was shown on behalf of the bank that it accepted the notes in the usual course of business, for value, and before maturity, and without knowledge of the consideration for which they had been given, and as to one of the notes the bank offered testimony to the effect that one of its officers asked the maker of the note about it before accepting it and was assured that the note would be paid by the maker. It was not shown, however, that any question was asked about the consideration for the note, or that the maker made any misrepresentation concerning it. The bank therefore insists that the maker of this note is estopped to question its validity on that account.

It is admitted that the company did not comply with the provisions of the statute known as the Blue Sky

law (§§ 751 *et seq.,* C. & M. Digest), and the notes are voidable for that reason.

It is insisted that it was not shown that the stock was actually issued; but we regard this as unimportant, as the consideration for the notes was the agreement on the part of the company to issue the stock upon the payment of the notes, so that the consideration for the notes was in fact the agreement to issue the stock. The company had therefore agreed to issue stock for a note, and it had made this contract without complying with the requirements of the Blue Sky law.

The case of *Randle* v. *Interstate Grocer Co.,* 147 Ark. 402, appears to be decisive of this case, unless the bank is an innocent holder of the note sued on. There the corporation had sold Randle shares of its stock and had taken renewal notes in payment, and, upon his refusal to pay his note, the corporation sued him. The provisions of §§ 751 and 762, C. & M. Digest, were set out in the opinion, and the court held that the sale, having been made in violation of law, was void, and the corporation's right to recover was denied. We quoted from the case of *Compagionette* v. *McArmick,* 91 Ark. 69, as follows: "A sale is illegal where the statute expressly declares it to be so, or where it prohibits its execution; and a sale is equally invalid where the statute only imposes a penalty upon the party for making it. It is not necessary that the statute should expressly declare the contract of sale to be void; but the infliction of a penalty upon what is declared as an offense implies a prohibition of such act, and thereby renders void any contract founded on such act. In this State it is the well settled doctrine that 'every contract made for or about any matter or thing which is prohibited and made unlawful by statute is void.'" Following this quotation we said: "So here the statute makes it unlawful for a person, firm or corporation of another State to come into this State and sell stocks without obtaining permission from the Bank Commissioner, in accordance with the statute. The plaintiff sold the stock

without complying with the statute, and thereby rendered the contract void.''

It is true that the sale in the Randle case was made by a foreign corporation, while in the instant case the contract of sale was made by a domestic corporation. But this fact is unimportant, for the reason that the statute imposes the same requirements on the domestic corporation in the matter of the sale of its stock as is imposed upon a foreign corporation.

Section 751, C. & M. Digest, reads as follows: ''Every person, corporation, copartnership, company, or association (except those exempt under the provisions of this act), organized or which shall hereafter be organized in this State, whether incorporated or unincorporated, which shall either himself, themselves or itself, or by or through others, sell or negotiate for the sale of any contract, stock, bonds or other securities issued by him, them, or it, within the State of Arkansas, shall be known for the purposes of this act as a domestic investment company. Every such person, corporation, copartnership, or association a resident of or organized in any other State, territory or government shall be known, for the purposes of this act, as a foreign investment company.''

It will be observed that this section designates every person, corporation, copartnership, company, or association (except those exempt under the provisions of this act), organized or which shall hereafter be organized in this State, whether incorporated or unincorporated, which shall sell or negotiate for the sale of any contract, stock, bonds or other securities issued by him, them, or it, as a domestic investment company. And that every such person, corporation, copartnership, or association a resident of or organized in any other State, territory or government shall be known for the purposes of the act as a foreign investment company. No distinction is made therefore between domestic and foreign corporations, except that the first is designated as a domestic investment company, while the latter is designated as a foreign investment company.

As no other distinction is made between domestic and foreign corporations, the same rule must be applied to each, and, if a foreign corporation cannot sell or contract to sell its stock without complying with the statute, it necessarily follows that a domestic corporation must likewise comply with the statute before offering its stock for sale.

The statute is very comprehensive in its terms, and applies to all sales of stocks and securities except those exempted from the provisions of the act by § 752, C. & M. Digest. There are eight of these exemptions, which need not be enumerated here, as it very clearly appears that the stock for which the notes sued on were given is not embraced in these exemptions.

Under the statutes of this State governing the organization of manufacturing and other business corporations (§§ 1700 *et seq.,* C. & M. Digest), it is provided that three or more persons may, by articles of agreement in writing, assume any name agreed upon, and become a body politic and corporate. The statute requires that, before the corporation shall commence business, the president and directors thereof shall file their articles of association, and also a certificate setting forth the purposes for which the corporation was formed, the amount of its capital stock, the amount actually paid in, with the names of its stockholders and the number of shares owned by each, with the clerk of the county in which the corporation is to have its principal place of business, and shall thereafter file said articles and certificate, bearing the indorsement of the county clerk, in the office of the Secretary of State, and, after this certificate has been recorded in the office of both the county clerk and the Secretary of State, and the fees paid which are required by law, the Secretary of State issues to the incorporators a certificate, which is commonly designated as a charter, and the organization then becomes a corporate entity.

The Blue Sky law, appearing as §§ 751 *et seq.,* C. & M. Digest, does not apply to these steps preliminary.

to the organization of a corporation. The statute relating to the organization of corporations does not require that all the stock authorized shall be subscribed before the Secretary of State shall issue the certificate of incorporation, but, after the corporation is organized and has become an entity, it comes within the operation of the Blue Sky law, and cannot sell its unsubscribed stock without first complying with the laws of the State governing such sales.

As we have said, the notes sued on were executed for the stock of a corporation, and, upon the authority of the Randle case, *supra,* the transaction was void, unless the bank acquired them as an innocent purchaser.

Upon the proposition that one of the makers of the note had said that it was his note and would be paid, it suffices to say that the law is, as stated in 13 C. J., § 451, p. 506, that "a party to an illegal contract cannot, either at the time of the execution of the contract or afterward, waive his right to set up the defense of illegality in any action thereon by the other party." And at § 453 of the same authority it is said: "An agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel."

It was said in the case of *Embrey* v. *Jemison,* 131 U. S. 336, that contracts made in violation of the law were not rendered valid by renewals or by subsequent promises to perform, and that this defense was not for the benefit of the party to such a contract, but to maintain the policy of the law. Numerous cases to the same effect are cited in the brief of counsel for appellee. See also *Faircloth* v. *DeLeon,* 7 S. E. 640; *Dunham* v. *Presby,* 120 Mass. 285, 289; *Cardoze* v. *Swift,* 113 Mass. 250; *American Mfg. Co.* v. *Crescent Drug Co.,* 73 Sou. 883; *Wilde* v. *Wilde,* 56 N. W. 724; *Barton* v. *Port Jackson, etc., Co.,* 17 Barb. (N. Y.) 397; *Cansler* v. *Penland,* 48 L. R. A. 441; *Pullman Palace Car Co.* v. *Central Transportation Co.,* 171 U. S. 138, 149; *Coppell* v. *Hall,* 7 Wall. 542; *Wheeler* v. *Wheeler,* 5 Lansing (N. Y.) 355; *Hardy* v. *Smith,* 136

Mass. 328, 331; *Carter* v. *Bradley County Road Imp. Dists. 1 and 2,* 155 Ark. 288.

The bank cannot therefore recover on these notes unless the showing is made that it acquired them as an innocent purchaser.

Testimony was offered by the bank tending to show that it acquired the notes in the usual course of business, for value, and before maturity, and without knowledge that they had been executed in violation of the Blue Sky law; but the court refused to submit this issue, upon the theory that they were void even in the hands of an innocent purchaser, inasmuch as they were executed in payment of stock which had been issued in violation of law.

In the case of *German Bank* v. *DeShon,* 41 Ark. 331, Judge BATTLE said: "It is true, as a rule, that a *bona fide* holder, who has received negotiable 'paper in the usual course of business,' as said by Mr. Daniel in his work on Negotiable Instruments, 'is unaffected by the fact that it originated in an illegal consideration, without any distinction between cases of illegality founded in moral crime or turpitude, which are termed *mala in se,* and those founded in positive statutory prohibition, which are termed *mala prohibita.* The law extends this peculiar protection to negotiable instruments, because it would seriously embarrass mercantile transactions to expose the trader to the consequences of having the bill or note passed to him impeached for some covert defect.' But there is one exception to this rule, and that is, when a statute declares a contract void, it gathers no vitality by its circulation in respect to the parties executing it, but it and the instrument evidencing it are void in the hands of every holder." (Citing numerous cases).

It appears therefore that the right of an innocent purchaser of a negotiable instrument to recover cannot be defeated because the note originated in an illegal consideration, and that it is immaterial whether the illegality is founded in moral crime or turpitude, or in violation of a positive statutory prohibition, unless the

statute prohibiting the act shall also declare that the contract on which the transaction was based is void.

It appears somewhat anomalous that a note may be based on an illegal or immoral consideration, or executed in violation of a positive statutory prohibition, and yet be enforceable when held by an innocent purchaser, unless there is an express declaration that such a contract is void; while, on the other hand, a recovery will be denied, even to an innocent purchaser, if there is an express statutory declaration that the contract forming the consideration for the note is void, or that the maker thereof may make defense to the collection of the same in the hands of any holder, as in case of notes for patent rights, etc., although the execution of such contracts themselves may not be either a crime or a misdemeanor. But the case of *German Bank* v. *DeShon* so declares the law. That was a suit on a note void for usury, and the right to recover was denied an innocent holder because usurious contracts are declared void by the Constitution, although they are not made either crimes or misdemeanors.

It follows therefore from the decision in the Randle case, *supra,* that the payee in a note executed in violation of the Blue Sky law cannot recover; but it also follows from the case of *German Bank* v. *DeShon, supra,* that the right to recover on such a note will not be denied an innocent holder because the Blue Sky law does not contain the declaration that contracts executed in violation thereof are void.

The judgment of the court below will therefore be reversed, with directions to submit to the jury the issue whether the bank is an innocent holder thereof.

If, upon the retrial here ordered, testimony should be offered that the notes sued on were not in fact executed in violation of the Blue Sky law, as that statute is herein interpreted, that issue may also be submitted to the jury.

For the error indicated the judgment of the court below is reversed, and the cause is remanded for a new trial.

HART and HUMPHREYS, JJ., concur.