BEAN *v.* HUMPHREY, STATE AUDITOR.

5-295                                    264 S. W. 2d 607

Opinion delivered February 15, 1954.

*Wiley W. Bean*, for appellant.

*Tom Gentry*, Attorney General, *W. R. Thrasher*, *Martin K. Fulk* and *Wm. H. Donham*, for appellee.

J. SEABORN HOLT, J.   Herbert Eldridge was appointed by the State Highway Commission as Director of Highways, effective May 1, 1953, at a salary of $1,250 per month, or $15,000 per year, which compensation was duly appropriated by the 1953 Legislature by Act 451.

By proper procedure, appellant, taxpayer, brought the present suit to enjoin the State Auditor and State Treasurer from paying Eldridge in excess of $5,000 per year, as provided by § 23, Art. XIX of the Constitution of this State.

Trial resulted in a decree dismissing appellant's complaint for want of equity and this appeal followed.

In effect, the questions presented are: Was the Director of Highways (Eldridge) a State officer within the meaning of § 23, Art. XIX, and if not a State officer, then did the General Assembly have the constitutional power to make appropriation to pay the salary of $15,000?

After a careful review of the record, we hold that the position of Director of Highways is not a State officer within the meaning of § 23, Art. XIX, above, that such Director, in the circumstances, is an employee only, and that the Legislature had the power to appropriate the Director's salary in question.

Sec. 23, Art. XIX provides: "No officer of this State, nor of any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites, more than five thousand dollars net profit per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury, as shall hereafter be directed by appropriate legislation."

The people of Arkansas, by an overwhelming vote (231,529 for, and 70,291 against) on November 4, 1952, adopted Constitutional Amendment 42, which provides: "§ 1. Commission created—Members—Powers.—There is hereby created a State Highway Commission which shall be vested with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers necessary or proper to enable the Commission or any of its officers or employees to carry out fully and effectively the regulations and laws relating to the State Highway Department." §§ 2 and 3 have to do with the terms of office of the Commission, §§ 4 and 5 with the removal of the Commission and filling vacancies, and § 6 provides: "Director of Highways.—The Commission shall appoint a Director of Highways who shall have such duties as may be prescribed by the Commission or by statute."

Thereafter by enabling Act 123 of 1953, the General Assembly, provided for the appointment of a Director of Highways, who would have control and management of affairs pertaining to the State highways, subject, however, to the control and approval of the Highway Commission. The Director was required to give a bond and take an oath.

At the same session of the Legislature, there was enacted, pursuant to the constitutional mandate, an appropriation Act 451, in which it was provided in § 2: "There is hereby established for the State Highway Department, for the 1953-1955 biennium, the following maximum number of regular employees and the maximum annual salaries of such employees; and no greater salary than that established herein shall be paid to any employee from appropriations hereinafter made for said department. Provided further, that it is the intention of this act to make available the maximum salaries provided herein to secure efficient, skilled employees; and in determining the annual salaries of such employees the administrative head of such department shall take into consideration ability and length of service, but it is not the intention of this act that the maximum salaries shall be paid unless such qualifications are complied with and then only within the limitations of the appropriations and funds available for such purpose."

Following this § 2, under the headnote, "Highway Maintenance, Director's office" is found:

| "Item No. | Title | Maximum No. of Employees | Maximum Annual Salary Rate |
|---|---|---|---|
| (1) | Director and Executive Secretary to Commission | 1 | $15,000.00 |
| (2) | Secretary to Director | 1 | 3,600.00 |
| (3) | Clerk-Stenographers | 2 | 2,400.00 |
| (4) | General Counsel | 1 | 6,600.00" |

It appears that only two witnesses testified, Mr. Orr, Chairman of the Highway Commission, and Director

Eldridge. Mr. Orr testified, in effect, that there was no contract entered into between the Commission and Mr. Eldridge, just a verbal understanding. His salary is $15,000 a year. There was no understanding as to the duration of his employment. The Commission can discharge Mr. Eldridge at any time with or without cause. Mr. Eldridge cannot exercise any functions of sovereignty. He is an employee of the Commission in the same sense as any one else. The Commission itself formulates the policies. Mr. Eldridge supplies the information at the direction of the Commission. Mr. Eldridge was employed by the Commission because of 30 odd years in all phases of highway work, including construction and administration. We needed that experience. It was at the request of the Commission that the Legislature set up this salary of $15,000 to enable the Commission to get an experienced person, and Mr. Eldridge was employed. His duty is to meet with the Commission at any time it meets, to make any recommendations or suggestions he cares to at any time, and to carry out any policy formulated by the Commission or directions which the Commission may set up, or any requests it may make of him as to work to be done. Mr. Eldridge cannot exercise any independent function. The Commission has complete supervision and control of all and any office duties. The Commission gives him certain work to do and expects him to do it. Mr. Eldridge has made numerous recommendations to the Commission which they did not follow. The Commission formulates the policies and then directs Mr. Eldridge, as Director of the Highway Department, to carry out these policies under the supervision of the Commission. Mr. Eldridge is being paid $15,000 a year. The Commission specifically gave him authority over the personnel. He can fire and hire and replace, as he sees fit. His work is co-extensive with the State of Arkansas.

Mr. Eldridge testified that he had no written contract with the Highway Department. The only thing that is written is the Commission's order that employed me. Every understanding I have had with the Highway Commission has been verbal. The Highway Commission can

discharge me at any time without notice, for any cause, or without cause. I have not been assigned any duties which I exercise independently of any supervision of the Commission. At the time I was employed by the State Highway Commission, I was a citizen and resident of the State of Texas. I cannot exercise any prerogative or sovereignty in my work. All authority which I have stems from the Commission and can be granted and taken away on a moment's notice, and any action in the case in any regard is their action can be modified or rescinded at any time they see fit. I am just performing a ministerial function of carrying out the policy and orders of the Commission.

In distinguishing between an officer and an employee, and pointing out the elements or criteria necessary to each, the text writer in *42 Am. Jur.*, page 888, (in Sections 10 to 12 inclusive), says: "A public officer is one whose functions and duties concern the public, and who exercises some portion of the sovereign power of the state. In this and in other respects he is to be distinguished from a private officer. The latter holds his position not by election or official appointment, but by contract, and his duties are performed at the instance and for the benefit of the individual or corporation employing him. . . .

"Generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. One contracting with the government is in no just and proper sense an officer of the government.

"There are points of difference between a public office and a public contract. As observed above, a public office embraces the idea of tenure, duration, and continuity. The duties connected therewith are continuing and permanent. A public contract, on the other hand, is limited in its duration and specific in its objects. Its terms define and limit the rights and obligations of the parties, and neither may depart therefrom without the

consent of the other. *Unlike a public office, a public contract does not involve a delegation of a function of sovereignty. The fact that the duties of a particular position or governmental function do not depend on contract is itself one of the criteria of a public office.*

"Public office, as hereinbefore defined and characterized, is in a sense an employment, and is very often referred to as such. But there is a distinction between a public office and a public employment which is not always clearly marked by judicial expression and is frequently shadowy and difficult to trace. The distinction, however, is one which in many instances becomes important and which the courts are called upon to observe. Although every public office may be an employment, every public employment is not an office, and the word 'employee' as used in statutes has in many cases been construed as not including officers.

"When a question arises whether a particular position in the public service is an office or an employment merely, recourse must be had to the distinguishing criteria or elements of public office. . . . Briefly stated, a position is a public office when it is created by law, with duties cast on the incumbent which involve some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position in the public service which lacks sufficient of the foregoing elements or characteristics to make it an office."

Here, the Highway Director's entire actions and powers are absolutely controlled by the Commission. He was employed by an oral contract for no specific term and could draw his salary by performed contract only. His salary, duties, and tenure of employment were left absolutely up to contract with the Highway Commission and dependent on such contract. The Commission could fire him at will. He was a nonresident when appointed, and at the time could not even qualify as an officer. He

has no sovereign powers whatever, a necessary requisite to any office, and no such powers have been delegated to him by the Highway Commission or by the Legislature. The fact that Act 123 of 1953 required him to take an oath and give bond is not controlling.

In our very recent case of *Maddox and Coffman* v. *State,* 220 Ark. 762, 249 S. W. 2d 972, we said: "Since the distinction between a public officer and a public employee tends to become indistinct when the position in dispute has some of the characteristics of each, we have never attempted to frame an inflexible definition of either. Yet the governing principles are well established. A public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive. *Rhoden* v. *Johnston,* 121 Ark. 317, 181 S. W. 128; *Middleton* v. *Miller County,* 134 Ark. 514, 204 S. W. 421. On the other hand, mere public employment differs from a public office in that some or all of these characteristics are lacking.

"It is clear that a school teacher, whose tenure, compensation, and duties are all fixed by his contract with the school board, is an employee rather than an officer. The position of superintendent comes somewhat closer to the dividing line, but we think that it too lies on the side of employment. . . .

"If the superintendent exercises any part of the sovereign power he does so as an agent of the school board and not as one to whom the legislature has delegated authority in the first instance," and in *Rhoden* v. *Johnston,* 121 Ark. 317, 181 S. W. 128, we use this language:

"In *United States* v. *Maurice,* 2 Brock. 96, Chief Justice MARSHALL said: 'Although an office is "an employment," it does not follow that every employment is an office. A man may certainly be employed under a con-

tract, express or implied, to do an act, or perform a service, without becoming an officer.'

"(3) There is a very interesting and useful discussion on this subject in the note to the case of *Shelby* v. *Alcorn, supra,* 72 Am. Dec., pp. 179-189, and a consideration of the authorities collated there convinces us that the statute does not create the office of road overseer, but merely provides for employment. In the first place, there is no definite tenure of office prescribed. The statute merely provides that a contract shall be entered into to cover a period of not exceeding one year. The contract may be entered into either by the county court or by the county judge in vacation, and it may be for a day or for a week, a month or a year. The emoluments of the office, also, are not fixed by statute, but are left purely to the contract to be entered into from time to time."

While it appears that the position of Highway Director has been referred to as an office, we think it was intended merely as a description of the position of employment. In *Middleton* v. *Miller County,* 134 Ark. 514, 204 S. W. 421, the question was whether a county health officer was an officer within the meaning of Art. XIX, § 5 of the State Constitution. There we said: "It is true that the position is referred to as an office, but this was manifestly intended merely as a description of the position and not as a declaration of the legislative will as to whether it should be treated as an office or an employment."

In short, we hold that essential requirements necessary to constitute the Director of Highways an officer are lacking, and in the circumstances here, he is an employee only, and as such entitled to compensation as provided by the General Assembly, not to exceed the $15,000 appropriated for such purposes.

Affirmed.

ED. F. McFADDIN, Justice (concurring). I concur in the result reached by the majority, but I arrive at my conclusion by a process of reasoning entirely different from that contained in the majority opinion, so I give my views.

I am thoroughly convinced that the State Highway Director [1] is a State *Officer*. In *Downey* v. *Toler*, 214 Ark. 334, 216 S. W. 2d 60, we held that a member of the Arkansas State Police force was a State *Officer;* and I think that holding conclusively establishes that the State Highway Director is a State *Officer*.

But, having concluded that the State Highway Director is a State Officer, I then come to a study of Art. 19, § 23 of the Constitution, which is urged by the appellant as the Constitutional inhibition against any salary in excess of $5,000 to the State Highway Director. From my study of this Constitutional Section, and the cases construing it, I arrive at the conclusion that the judgment in the present case must be affirmed under the authority of *Griffin* v. *Rhoton*, 85 Ark. 89, 107 S. W. 380.

Art. 19, § 23 of our present Constitution (adopted in 1874) reads:

"No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

Under the authority of this Constitutional provision, the Legislature passed Act 47 of 1875, which may now be found in § 12-1801, *et seq.*, Ark. Stats. The germane portions of this Enabling Act of 1875 read:

"It shall be the duty of each of the following named officers, viz: the Secretary of State, Auditor of State, Treasurer of State and Commissioner of State Lands, and of each officer of any county, city, town or village receiving fees or emoluments of office, to keep a record book, in which shall be entered on each day an account of all moneys or other funds received by him, in payment of fees or by way of emolument pertaining to his office said

---

[1] In Amendment No. 42, the title of the position is "Director of Highways." In Act 123 of 1953, the title of the position is "Director of State Highways"; and in Act 434 of 1953, the title of the position is "State Highway Director." These all refer to the same position.

record showing in each instance by whom, on what account and in what funds, such payment was made.

"...

"If the total amount of the receipts of the office shall exceed in par funds, or their equivalent of value the sum of five thousand dollars ($5,000.00), then the officer shall further report the amount expended by him in the conduct of the business of his office for said year, and voucher for all such expenditures shall be produced by the officer reporting, and examined by such Judge, Mayor or other chief officer, and, if such expenditures be approved, the amount thereof shall be deducted from the gross amount or receipts as estimated as hereinbefore prescribed by the reviewing officer, and in all cases where the balance remaining in the hands of any officer shall exceed the sum of five thousand dollars ($5,000.00), or its equivalent, the excess shall at once be paid into the treasury. . . ."

With the Constitutional and Statutory provisions being as above stated, this Court decided in 1907 the case of *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S. W. 380. In that case, Griffin as a Taxpayer, brought suit against Rhoton, alleging: (1) that Rhoton, as Prosecuting Attorney was a State Officer; (2) that Rhoton, as such Officer, had received in excess of $5,000.00 net per annum from the Office of Prosecuting Attorney; and (3) that Rhoton had failed and refused to pay the said excess into the Treasury. The prayer was for an accounting and a payment of the excess.

The Supreme Court of Arkansas held: (1) that Rhoton was a State Officer; but (2) that Art. 19, § 23, of the Constitution was not self-executing; and (3) therefore, no action could be brought under that Constitutional provision until the Legislature passed an Enabling Act broad enough to cover such action; and (4) that the Enabling Act of 1875 did not extend to the Office of Prosecuting Attorney. The Court pointed out that the Enabling Act, as heretofore quoted, listed only the following State Officers: Secretary of State, Auditor of State,

Treasurer of State, and Commissioner of State Lands. Therefore Griffin's action as a Taxpayer against Rhoton failed, because the Constitutional provision (Art. 19, § 23, the same as here involved) was not self-executing, and the Legislature had never extended the Constitutional provision to cover the Officer there involved. Here are some of the pertinent excerpts from that opinion:

"Is the provision in question self-executing?

"Judge COOLEY laid down the following general rule for determining whether or not such provisions are self-executing: 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' Cooley's Const. Lim. (7th Ed.), p. 121.

". . .

"We are of the opinion that the provision is not self-executing, and that it is inoperative without legislation putting it in force."

*Griffin* v. *Rhoton, (supra)*, was decided by this Court in 1907; and I cannot find any Legislative enactment thereafter which could be called an Enabling Act to make Art. 19, § 23, of the Constitution apply to the office of State Highway Director. In fact, the 1875 Enabling Act —Act 47 of 1875—has never been broadened. So the effect of the holding in *Griffin* v. *Rhoton* has not been modified by the Legislature.

Furthermore, we have frequently cited *Griffin* v. *Rhoton (supra)*, on this point that Art. 19, § 23 of the Constitution is not self-executing. Some of the cases are: *Ark. Tax Comm.* v. *Moore*, 103 Ark. 48, 145 S. W. 199; *Cotham* v. *Coffman*, 111 Ark. 108, 163 S. W. 1183; *Cumnock* v. *Little Rock*, 168 Ark. 777, 271 S. W. 466; *State* v. *Landers*, 183 Ark. 1138, 40 S. W. 2d 432; and *Samples* v. *Grady*, 207 Ark. 724, 182 S. W. 2d 875.

Neither in *Griffin* v. *Rhoton,* nor in any of the subsequent cases, has this Court ever attempted to draw any distinction to the effect that part of Art. 19, § 23, of the Constitution might be self-executing as to salaries, but not self-executing as to fees. Neither has there been any attempt in any of the cases to say that Art. 19, § 23, was self-executing as a Constitutional limitation on the power of the Legislature to fix salaries. No: the case of *Griffin* v. *Rhoton (supra),* held that Art. 19, § 23, of the Constitution was not self-executing; and every subsequent case has assumed that the whole Section was so classified, and not a part of it.

It is not a question of what I would decide today if the matter were now here without a previous opinion.[2] The point is, that *either* we must now overrule retrospectively *Griffin* v. *Rhoton (supra),* and every case that followed it, *or* we must follow *Griffin* v. *Rhoton,* which holds that Art. 19, § 23, of the Constitution is not self-executing. Faced with that alternative, I prefer to follow *Griffin* v. *Rhoton.* The results are: (1) that Art. 19, § 23, of the Constitution is not self-executing; (2) that the only Enabling Act passed by the Legislature to execute the said Constitutional provision is Act 47 of 1875 (§ 12-1801, *et seq.,* Ark. Stats.); and (3) that said Act of 1875 does not apply to the Director of State Highways. Until the Legislature enacts a more comprehensive Enabling Act to Art. 19, § 23, of the Constitution, then under *Griffin* v. *Rhoton,* this Court cannot declare void a salary appropriation like the one in the case at bar.

Therefore, I vote to affirm the decree of the Chancery Court.

GRIFFIN SMITH, Chief Justice, dissenting. It has never been supposed that the functions of a court include the right to read out of the constitution and statutes their

---

[2] If the matter were one here on first impression, I am inclined to believe that I would follow the reasoning contained in the opinion of the Court of Appeals of Kentucky in *Shipp* v. *Rodes,* 196 Ky. 523, 245 S. W. 157, which holds that generally prohibitive and restrictive Constitutional provisions are self-executing and may be enforced by the Courts, independently of Legislative action. The Kentucky Constitutional provision was in most essentials similar to our Constitutional provision.

obvious essentials, and to substitute matters of conveni-ence thought by some of the judges to be wholesome from a standpoint of public emergency.

Perhaps nothing is more accurate by way of summa-tion than the general but erroneous belief that Chief Jus-tice HUGHES of the U. S. Supreme Court once remarked that the constitution is just what the judges say it is. The statement was taken from context and is not a correct presentation of what that great official said.

But today we are having brought home to us the fac-tual realization that in Arkansas the constitution—far from being the fundamental law of the land—is what a majority of the court says it is or is not.

Amendment No. 42 was conceived and adopted in con-sequence of a praiseworthy purpose to measurably remove the Highway Commission from the control of any gover-nor. To what extent the plan may succeed depends upon sincerity of the state's chief executive and an unswerving course by the commissioners: a hands-off policy upon the one hand and a refusal upon the other to be influenced or coerced.

In an opinion fortunate from the standpoint of ex-pediency and in its recognition that the constitutional maximum of $5,000 per annum allowable to state officers is not sufficient to compensate a competent engineer as Highway Director, but unfortunate in that resort is had to strange reasoning in disregard of constitutional and statutory provisions, the court's majority holds that one designated by statute as an officer is nothing more than an employee, and by parity of logic says that neither the General Assembly nor framers of the constitution, includ-ing Amendment No. 42, knew very much about what they were doing.

The gist of the majority's pronouncement is that the Director is not a state official within the meaning of Art. 19, § 23, of the constitution, Amendment No. 42, or any of our statutes. True, the opinion mentions what is judi-cially termed Enabling Act No. 123 of 1953, but whether

through inadvertence or carelessness the substance of that Act is bypassed does not appear from any affirmative language. Stress is then placed upon Act 451, which appropriates for highway maintenance, the director's *office*, and miscellaneous highway expenditures. We are then relegated to 42 American Jurisprudence for a determination of what the law in Arkansas is,[1] together with the very comprehensive statement of Chief Justice MARSHALL that although an office is an employment, it does not follow that every employment is an office, for "A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without being an officer".[2]

In contradiction of the very statute cited as an enabling act, the majority says, "In short, we hold that the essential requirements necessary to constitute the Director of Highways an officer are lacking, and he is an employee only".

Now let's see what the lawmaking authority has said. As has been shown, Amendment No. 42 creates the State Highway Commission and invests it *with all the powers and duties now or hereafter imposed by law for the administration of the State Highway Department, together with all powers* necessary or proper . . ."—to do what? "To enable the Commission *or any of its officers* or employees to carry out fully and effectively the regulations and laws relating to the [Department]".

No finesse of construction is involved when one draws from this language the idea, (a) that the Commissioners are officers, and (b) that the commission is authorized to engage two classes of persons—officers and employees. Since the commissioners are officers and the Amendment speaks of "its officers or employees", the meaning is too clear to admit of a suspicion of a doubt.

---

[1] For a discussion of the propriety of citing a work of this nature see article by GEORGE ROSE SMITH, published in Arkansas Law Review, 1947, Vol. 1, No. 2.

[2] With this statement no rational person would disagree. It would not, for instance, be urged that a contractor who for stipulated sum, builds a highway, is an officer; nor could it be said that a school professor who does not exercise any of the sovereign powers of the state is an officer. Many such examples might be mentioned.

Now the only employment mandate contained in the Amendment, § 6, is that the *Commission* shall appoint a Director of Highways who shall have such duties as may be prescribed by the Commission *or by statute*.

It is now enlightening to turn to that portion of Act 123 not mentioned in the majority opinion—a statute expressly referred to as an enabling act and constructively approved. Section 3 of Act 123 says that the Director "shall be the chief executive officer of the State Highway Department", and § 4 is an imperative that he take an oath "that he will faithfully and honestly execute *the duties of the office* during his continuance therein".

Act 251 of 1949 was a legislative effort to change the Director from an officer to the role of an employee in order to justify an annual salary of $7,500. Section 2 of the Act eliminated the word "office" from the secondary oath the Director was required to take. But in 1953, with full knowledge that Amendment No. 42 required the appointment of a Director, the status was restored.

This, however, is not all. Methods by which possession of land taken for state highway purposes under the right of eminent domain is set out in Act 115 of 1953. In any proceeding instituted "by and in the name of the state", involving the acquisition of any real property or any interest therein, or any easement for public highway purposes, the petitioner [State of Arkansas] may file with the condemnation petition, or at any time before judgment, "a declaration of taking signed by the Director of Highways, declaring that said real property or any interest therein or any easement is thereby taken for the use of the State of Arkansas."

Is this an act of sovereignty?

The history of the office of Director of Highways is interesting. By Act 65 of 1929, Ark. Stat's, § 76-305, the Treasurer of State could not pay money on warrants drawn against the highway fund unless they were countersigned by the State Highway Engineer; and at one time bonds had to be countersigned by the Director.

Judge BUTLER, in *Arkansas State Highway Commission* v. *Nelson,* 191 Ark. 629, 87 S. W. 2d 394, quoted with approval this statement from a Florida case: ''The road department is a state agency and component part of the state government. The product of its work is state property. It exercises a part of the sovereign power of the state, . . .'' etc. Under Act 115 of 1953 a part of the sovereign power of the state—the initiation of proceedings to take private property for public purposes—is committed to the Director. Does he act as an employee, or as an officer?

In mentioning various Acts the purpose here is to stress the legislative concept of the *office of director.* Some of these Acts may have been amended, some superseded, and any reference to them is not for the purpose of calling attention to existing substantive law, but to illustrate how the General Assembly felt when it was treating the subject. For example, consider Ark. Stat's, § 76-201, where it was provided that any Commissioner, or the Director of Highways, could be removed by the Governor without the consent of the Senate for inefficiency, negligence of duty, *or misconduct in office.*

Section 76-203 imposed upon the Governor the duty of appointing a Director of Highways, who would be ''*the chief* executive officer of the State Highway Department''. Incidentally, this is the exact language employed in Act 123 of 1953.

Section 76-207, Ark. Stat's, provided that wherever [in the law then applicable] an authority is granted or duty imposed upon the chairman of the State Highway Commission, ''*the same shall be vested in the office of the Director of Highways*''.

Section 76-209, Ark. Stat's, permitted the Director of Highways to employ in the Highway Department the personnel set out in detail.

Section 76-215 compels the Director to swear that ''I will [not] use any information or influence I may have *by reason of my official position* to gain any pecuniary

reward", and by § 76-220, Ark. Stat's, premiums on bonds required of *officials or employees* of the Highway Department were payable as public obligations.

The Governor, State Comptroller, and Director of State Highways were made an official board by Act 115 of 1935, Ark. Stat's, § 76-228.

In *Downey* v. *Toler, Judge*, 214 Ark. 334, 216 S. W. 2d 60, we held that members of the Arkansas State Police were officers, and in actions involving official duties they could be sued in Pulaski County only.

An opinion written by Judge FRANK G. SMITH, *Carter* v. *Bradley County Road Improvement Districts*, 155 Ark. 288, 246 S. W. 9, dealt with the status of the State Highway Engineer who was required (like the present Director) to subscribe to an official oath. Carter, the engineer, had contracted with road improvement districts to do certain work. In a statement of facts Judge Smith said that Carter "took the oath of office" prescribed by the applicable statute. It required all officers and employees of the [Department] to take *the oath of office* provided by the constitution, and in addition a separate oath not to be interested in contracts, etc.

At that time the Engineer's duties were to make surveys, investigations and inspections, and prepare such maps, plans, specifications, estimates and reports, and do such other technical work as might be required by the Department, and "He shall, under the direction of the [Commission] perform such other duties as may be required by law and may be proper and convenient for carrying out the purposes of this Act". After citing *Bradley County Road Improvement District* v. *Jarratt*, 144 Ark. 260, 222 S. W. 14, the opinion said that the law announced in *Tallman* v. *Lewis*, 124 Ark. 6, 186 S. W. 296, was applicable.

Tallman was a commissioner of a drainage district and had been employed by the commissioners to supervise construction of a ditch. "The law under which he was proceeding", says the decision, "did not provide that any

contract made by a commissioner with the drainage district should be void, *but it did require the commissioner to make oath that he would not, directly or indirectly, be interested in any contract* made by the board''. The opinion then goes to this point: ''So here the oath of the highway engineer must be treated as a prohibition against entering into contracts whereby he became interested, directly or indirectly'', in the result.

Quite clearly Judge SMITH, and this Court's majority, held that Carter was a public officer. Reinforcing this construction is a paragraph in the opinion on rehearing, also written by Judge SMITH: ''It is argued that we should not hold the contract in question void as against public policy, for the reason that on March 11, 1919, *while Carter was filling the office of State Highway Engineer,* the General Assembly passed a number of acts'' [urged in absolution].

For venue purposes an action on the official bond of the Sheriff of Montgomery County was restricted to that county. But effect of the opinion was much broader. It included members of a posse who assisted the sheriff, and who were sued in Polk county. *Edwards* v. *Jackson,* 176 Ark. 107; 2 S. W. 2d 44.

A reconciliation of today's opinion with what this court has formerly said, and with the statutes and constitution, can only be achieved by applying the famous comment of Mr. Justice ROBERTS of the U. S. Supreme Court. In characterizing a particularly objectionable decision the justice likened it to a railway ticket, good for today and one way only.