The Honorable Bobby Tullis State Representative Box 277 Mineral Springs, Arkansas 71951
Dear Representative Tullis:
This is in response to your request for an opinion regarding the use of county library funds for repairing the building which houses the county library, and the employment of a county library board member by one of the county's branch libraries. You have asked the following specific questions in this regard:
 (1) May a county library board use county library funds to pay for repairs to the county owned building in which the county library is housed?
 (2) May a member of a county library board work in one of the branches of the library and receive compensation for his or her services?
The answer to your first question appears to be yes. Pursuant to A.C.A. 13-2-404 (Supp. 1987), county library boards have the authority to appropriate funds for repairs to county libraries. 17-1002 provides:
 All funds of the county free library shall be in the custody of the county treasurer and shall constitute a separate fund to be known as the County Free Library Fund. No claim against such fund shall be approved by the county court until acted upon by the County Library Board, if such board has been created, and payment authorized by said board. Such claim (claims) when certified as valid claims by the board shall be acted upon as all other claims against the county. Funds received by the county free library by gift, bequest, devise or donation shall remain in the custody of the County Library Board, if such board has been created, and shall be used by it for the establishment, maintenance and operation of the county library.
Assuming, therefore, that the county library in question is in fact a "county free library" as contemplated under A.C.A. 13-2-401
(Supp. 1987), it may be concluded that the use of the funds for repairs to the building housing the library is appropriate. Repairs to this building reasonably fall within the permissible uses under 13-2-404, i.e., the "establishment, maintenance and operation of the county library."
A question might arise, however, if it is contemplated that the funds will be used to repair areas unrelated to the county library. 17-1002 clearly mandates the use of these funds for the "establishment, maintenance and operation of the county library."
The answer your second question also appears to be yes. This inquiry raises the issue of whether a conflict of interest exists where a county library board member is employed by one of the county's branch libraries. As a general rule, there are three types of conflicts of interest prohibited by law: a constitutional prohibition, statutory prohibition, and a conflict that arises due an an incompatibility of offices. Byrd v. State,240 Ark. 743, 402 S.W.2d 121 (1966). There are no statutory or constitutional prohibitions applicable to the facts presented. Nor can it be contended that a conflict of interest arises from an incompatibility of offices.
An incompatibility in offices arises "where one office is subordinate to another." Id. at 745. One factor considered in determining whether offices are incompatible is the degree of supervision which the superior officer exercises over the subordinate. See Tappan v. Helena Fed. Savings Loan Assn.,193 Ark. 1023, 104 S.W.2d 458 (1937). In the situation posed, employment by the county's branch library does not appear to rise to the level of a public office. The board member would instead, be considered a public employee.
The Supreme Court of Arkansas, in the case of Maddox Coffman v. State, 220 Ark. 762, 249 S.W.2d 972 (1952), addressed the issue of whether a salaried school teacher and superintendent could also serve as members of the school board for the district which employed them. The Court held that employment by the school district did not preclude their membership on the school board. In distinguishing between a public employee and public officer, the Court made the following observations: Since the distinction between a public officer and a public employee tends to become indistinct when the position in dispute has some of the characteristics of each, we have never attempted to form an inflexible definition of either. Yet the governing principles are well established. A public officer ordinarily exercises some part of the state's sovereign power. His tenure of office, his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive. (Citations omitted). On the other hand, mere public employment differs from a public office in that some or all of these characteristics are lacking.
Maddox and Coffman, supra, at 763-64.
See also Bean v. Humphrey, State Auditor, 223 Ark. 118, 264 S.W.2d 607
(1954); Harvey v. Ridgeway, 248 Ark. 35, 450 S.W.2d 281
(1970); Martindale v. Harvey, 259 Ark. 416, 533 S.W.2d 198 (1976). Based on the language of the above quoted case, it may be concluded that the board member serves as a public employee in his employment by the branch library, given that the relationship arises by contract and that no function of the sovereign has been delegated. Such employment does not require the taking of an oath, the giving of a bond, nor a commission, as required of a public officer. Since employment by the library would not constitute an office, cases governing incompatibility of offices do not apply; nor does there appear to be any other authority precluding the board member from serving in both capacities.
It should be noted that a conflict of interest still may arise where the board member is required to act on some matter which specifically relates to his or her employment by the library, requiring action by the county library board. In this case, the board member should disqualify himself or herself from participation in the decision-making process. Since the particular duties and functions of the county library board are determined by ordinance of the Quorum Court (See A.C.A. 14-14-712
(Supp. 1987)), it is difficult to ascertain from the facts whether such a situation would arise requiring the board member to disqualify.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.